## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RACHEL KLEIMAN DASILVA | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-15-541 |
| | : | |
| | : | |
| EDUCATION AFFILIATES, INC., et al. | : | |
| | : | |

### MEMORANDUM

Rachel DaSilva filed this action against Education Affiliates, Inc. and AllState Career, Inc. (collectively, "the defendants"), alleging retaliation under the Family and Medical Leave Act ("FMLA"), specifically that she was fired because she took covered medical leave. The defendants have moved for summary judgment. (Mot. Summ. J., ECF No. 27). The court finds oral argument unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2014). For the reasons stated below, the defendants' motion will be granted.

### BACKGROUND

The defendants in this case operate for-profit vocational schools across the country. (Mot. Summ. J., Ex. 1, daRosa Aff. ¶ 2, ECF No. 27-2). DaSilva, an at-will employee, worked as the Program Director and as an instructor for the Esthetics program at the defendants' Fortis Institute Campus in Baltimore, Maryland. *Id.* ¶¶ 12, 13. DaSilva was employed by the defendants from March 2009 until her termination on October 12, 2012. *Id.* She was supervised at all relevant times by the campus president, Antonio daRosa. *Id.* ¶ 3.

DaSilva had a less than harmonious working relationship with daRosa.[1]  Prior to the

events surrounding the instant FMLA claim, DaSilva retained counsel and expressed concerns as

early as April 2012 that her employer was "trying to fire her."  (Mot. Summ. J., Ex. 2, DaSilva

Dep. 18:19 –20:20, 121:16–20, ECF No. 27-3).[2]

The defendants cite the following events as justification for DaSilva's termination.

*Field Trip*

In her capacity as an instructor, DaSilva arranged a field trip to the Dermalogica Institute

in Vienna, Virginia on August 23, 2012. *Id.* at 50:14–17.  She informed her supervisors of the

planned trip and arranged for a substitute to teach a class of students not attending the trip.  (Mot.

Summ. J., Ex. 5, Email Re: Field Trip Aug 23, ECF No. 27-6).  DaSilva did not attend this trip,

though she submitted signed attendance forms indicating which students were present on the trip.

(DaSilva Dep. 58:15–59:1, ECF No. 27-3; Mot. Summ. J., Ex. 3, Attendance Roster, ECF No.

27-4).  DaSilva failed to inform her supervisors that she was not on the trip, later claiming she

worked from home that day and was not required to accompany her students.  (DaSilva Dep.

73:2–11, ECF No. 27-3).

*Unrecorded Cash Sales*

As part of her regular duties, DaSilva sold beauty and skincare products to customers of

the Fortis Institute's spa.  She sometimes sold these items for cash.  *Id.* at 84:13–85:12.  Pursuant

to school policy, the spa had a computer system in which the employee making a sale had to

input the customer's name, address, and the purchased product.  *Id.* at 87:6–88:5.  At some

unspecified date in September of 2012, three customers claimed they gave DaSilva cash for

---

[1] While DaSilva contends much of the friction with her employer began when daRosa came to Fortis in
2011, (Compl. 2–4, ECF No. 1), she was issued a written warning for unspecified misconduct in 2010.
(DaSilva Dep. 16:7–17:9, ECF No. 27-3).
[2] Assuming DaSilva is correct, presumably her employer's motivation was not based on her use of FMLA
leave, as she did not take FMLA leave until September 2012.

products that purportedly were never delivered.  (daRosa Aff. ¶¶ 5–6, ECF No. 27-2; DaSilva

Dep. 90:1–4, ECF No. 27-3).  The defendants undertook an investigation and found no record of

these transactions in the computer system. (daRosa Aff. ¶ 6, ECF No. 27-2).

*FMLA Leave and Subsequent Termination*

On September 12, 2012, DaSilva met with daRosa and another employee, Biliqua Bing.

(daRosa Aff. ¶ 8, ECF No. 27-2; DaSilva Dep. 23:3–7, 28:15–17, ECF No. 27-3).[3]  During this

meeting, DaSilva reported to be ill and left for the day.  The following day, DaSilva visited her

doctor and was instructed to take medical leave. (DaSilva Dep. 28:4–8, ECF No. 27-3).  She took

leave under the FMLA from September 13, 2012 until her return on October 12, 2012.  (daRosa

Aff. ¶ 10, ECF No. 27-2; DaSilva Dep. 42:21–43:18, ECF No. 27-3).

Upon her return on October 12, 2012, DaSilva was summoned to daRosa's office to

discuss the allegations of theft and dishonesty surrounding the cash sales and the field trip.

(DaSilva Dep., 44:19–46:6, ECF No. 27-3).  daRosa terminated DaSilva during this meeting.

(daRosa Aff. ¶ 13, ECF No. 27-2).  DaSilva initiated this action on February 25, 2015, alleging

she was terminated as retaliation for exercising her rights under the FMLA. (Compl., ECF No.

1).[4]

---

[3] The content of that discussion remains a disputed fact.  daRosa asserts that he raised the issue of the
field trip and the cash sales at this meeting.  (daRosa Aff. ¶ 8, ECF No. 27-2).  Earl Smith, DaSilva's
immediate supervisor, claims he was also at the September 12 meeting and affirms daRosa's account of
the discussion.  (Mot. Summ. J., Ex. 3, Smith Aff. ¶ 3, ECF No. 27-7).  DaSilva contends neither of these
matters were discussed, (DaSilva Dep. 23:3–7, 28:15–17, ECF No. 27-3), and that the discussion actually
regarded DaSilva's efforts to prepare a new curriculum for the Esthetics program.  (Opp'n Mot. Summ. J.,
DaSilva Aff. ¶ 6, ECF No. 30-1).
[4] DaSilva also alleges that the defendants made her job more difficult because she spoke out against
illegal workplace practices.  (Compl. ¶¶ 12–14, ECF No. 1).  These statements notwithstanding,
DaSilva's complaint claims only a violation of the FMLA's retaliation provisions.  Her opposition to the
defendants' motion for summary judgment likewise focuses only on the singular FMLA retaliation claim.
(Opp'n Mot. Summ. J., ECF No. 30).  Accordingly, the court does not consider any other statute possibly
implicated by such actions.

## ANALYSIS

### I.      Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  Whether a fact is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).  The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in her favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council*, 721 F.3d 264, 283 (4th Cir. 2013).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (citation and quotation marks omitted).

### II.      DaSilva's Affidavits

In her opposition to the defendants' motion for summary judgment, DaSilva relies on affidavits provided by herself, Lisa Lewis, and Shayna Redding.  (Opp'n Mot. Summ. J., Affidavits, ECF No. 30-1).  All are former employees of the defendants.  *Id.*  The defendants challenge the use and reliability of these affidavits.

In a number of instances, DaSilva's affidavit contradicts her prior sworn deposition testimony in this case. "[The Fourth Circuit has] consistently held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999). "Application of the sham affidavit rule at the summary judgment stage 'must be carefully limited to situations involving flat contradictions of material fact.'" *Zimmerman v. Novartis Pharm. Corp.*, 287 F.R.D. 357, 362 (D. Md. 2012) (quoting *Mandengue v. ADT Sec. Sys., Inc.,* Civil No. ELH–09–3103, 2012 WL 892621, at *18 (D. Md. Mar. 14, 2012)). Because DaSilva's affidavit is, in some respects, flatly inconsistent with her prior deposition testimony, those portions of her affidavit will be disregarded.[5] *See id.*

While the defendants also challenge DaSilva's reliance on the Lewis and Redding affidavits, those affidavits do not create genuine issues of material fact and are therefore irrelevant in deciding summary judgment. Lewis's affidavit addresses neither the field trip nor the cash sales. Similarly, Redding's affidavit does not address the field trip, and speaks only to DaSilva's inability to obtain copies of receipts she purports to have provided to daRosa during the October meeting. Whether DaSilva received these copies has no bearing on the defendants' honest belief as to her misconduct surrounding the cash sales. Additionally, the affidavits contain only unsupported speculation that Lewis and Redding's terminations were linked to taking FMLA leave. As such, neither affidavit refutes the defendants' honest belief that DaSilva engaged in theft and dishonesty, nor does either provide any evidence that would support a

---

[5] For example, in her deposition, DaSilva claimed she did not attend the field trip because she "already had the training," and that she "worked from home that day" because she "needed a break." (DaSilva Dep., 44:19–46:6, ECF No. 27-3). Her subsequent affidavit, however, stated she would have attended the field trip were it not for car troubles. (DaSilva Aff. ¶¶ 10–11, ECF No. 30-1). Additionally, in her affidavit, DaSilva states that "all pre-sales were entered into the register at the Cosmetology Department," *id.* ¶ 8; however, she acknowledged in her deposition that no record existed of sales to a complaining customer during the relevant time period. (DaSilva Dep., 100:3–102:18, ECF No. 27-3).

showing of FMLA-related pretext.  Thus, the court need not consider the defendants' arguments

opposing consideration of these affidavits.

### III.    DaSilva's FMLA Retaliation Claim

DaSilva's FMLA retaliation claim fails on the merits.[6]  "In addition to [its] prescriptive

rights and protections, the [FMLA] also contains *proscriptive* provisions that protect employees

from discrimination or retaliation for exercising their substantive rights under the FMLA."

*Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006).  Employers may not

"retaliat[e] against an employee . . . for having exercised or attempted to exercise FMLA rights."

29 C.F.R. § 825.220(c).  These provisions "provide[ ] a cause of action for retaliation."  *Dotson*

*v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009).

"FMLA claims arising under the retaliation theory are analogous to those derived under

Title VII and so are analyzed under the burden-shifting framework of [*McDonnell Douglas*]."

*Yashenko*, 446 F.3d at 550–51; *see also Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir.

2013).  Thus, to succeed on a retaliation claim, a plaintiff "must first make a prima facie showing

that [s]he engaged in protected activity, that the employer took adverse action against h[er], and

that the adverse action was causally connected to the plaintiff's protected activity."  *Yashenko*,

446 F.3d at 551 (internal quotation marks and citation omitted).  If a plaintiff puts forth enough

evidence to establish a prima facie case of retaliation and the employer offers a non-

discriminatory explanation for her termination, the plaintiff bears the burden of showing that the

employer's explanation is mere pretext for FMLA retaliation.  *Id.*

To meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's

termination, a defendant need only have had an honest belief that the alleged reason or

---

[6] As the defendants' motion prevails on the merits, the court need not address the defendants' arguments pertaining to the FMLA's statute of limitations' "willfulness" requirement.

misconduct occurred. "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, *or even correct*, ultimately, so long as it truly was the reason for the plaintiff's termination." *Laing*, 703 F.3d at 722 (emphasis added) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)). Thus, the court is not concerned with the veracity of the allegations per se; rather, the court looks to what the defendants believed to be true at the time of termination.

The undisputed facts show that, at the October meeting, daRosa confronted DaSilva with allegations of theft and dishonesty. Either allegation, if honestly believed to be true, is legitimate grounds for terminating an at-will employee. DaSilva's employer received three separate complaints about undelivered products from cash sales attributed to DaSilva. daRosa conducted an investigation and looked at the relevant electronic records. Finding no record of the sales, daRosa reasonably concluded that some misconduct had occurred surrounding these cash transactions.[7] This is sufficient for the defendants to meet their burden of providing a legitimate rationale for DaSilva's termination.

Additionally, daRosa reasonably concluded that DaSilva engaged in misconduct surrounding the class field trip. His investigation revealed an email DaSilva sent to Earl Smith, which stated that a substitute teacher would be covering her class during the trip. From this email, her supervisors logically inferred that DaSilva would attend the field trip. DaSilva did not attend the trip and did not relieve the substitute teacher. She did, however, sign attendance forms indicating which students attended the field trip. DaSilva failed to inform her supervisors that

---

[7] DaSilva claims to have presented receipts to daRosa at the October meeting; however, this does not contradict daRosa's honest belief that DaSilva engaged in dishonesty or theft. When confronted at her deposition with the spa's electronic records from which such receipts would be generated, DaSilva acknowledged no cash sales were recorded for at least one of the complaining customers during the relevant time period, and she could not recall for which customers or for which time period she purportedly provided receipts. (DaSilva Dep. 100:3–103:15, ECF No. 27-3).

she was not on the trip or, as she later claimed, that she was working from home that day. These undisputed facts allowed daRosa to draw the reasonable conclusion that DaSilva was dishonest in representing her attendance on the field trip. Regardless of DaSilva's actual intent in not attending the trip or informing her supervisors, that daRosa could draw a reasonable conclusion of misconduct is sufficient for the defendants to meet their burden of providing a legitimate rationale for DaSilva's termination.

Once the defendants have offered a legitimate rationale, the burden shifts back to the plaintiff. Even construing all evidence in her favor, DaSilva cannot show that the defendants' legitimate rationale was mere pretext for FMLA retaliation.[8] "A plaintiff who establishes a prima facie case of retaliation bears the ultimate burden of persuading the court that [she] has been the victim of intentional [retaliation]. . . . In order to carry this burden, a plaintiff must establish both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (alterations in original) (internal quotation marks and citations omitted). A showing of pretext "does not require that protected activity be the *only* factor that resulted in an adverse action, just that the adverse action would not have occurred without the protected activity." *Taylor v. Rite Aid Corp.*, 993 F. Supp. 2d 551, 567 (D. Md. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). That is, DaSilva must show that the defendants would not have terminated her *but for* her taking FMLA leave. *Foster*, 787 F.3d at 252.

Here, DaSilva has not produced sufficient evidence to show she would not have been terminated but for her taking FMLA leave. She has not introduced a single instance wherein an

---

[8] As the court finds the plaintiff cannot show pretext, it need not analyze whether DaSilva's claim even states a prima facie case of discrimination.

employee accused of theft was not terminated by the defendants.[9]  Nor has she disputed the relevant facts surrounding her absence from the field trip.[10]  Further, the defendants have proffered evidence that approximately 300 of the defendants' employees took FMLA leave during the time period of November 2011 through December 2014 without facing termination thereafter.  (Mot. Summ. J., Ex. 11, Hosey Aff. ¶ 5, ECF No. 27-12).  At this stage of the litigation, DaSilva must rely on more than unsupported speculation of pretext.  That she was fired upon returning from leave is, standing alone, insufficient to establish the requisite but for causation.  Accordingly, DaSilva's FMLA retaliation claim fails to survive summary judgment on the merits.

A separate order follows.

___12/31/15___                                            _____/S/_____
Date                                                                Catherine C. Blake
                                                                       United States District Judge

---

[9] The defendants, on the other hand, have pointed to at least two other employees who "were terminated for committing offenses similar to the offenses that resulted in DaSilva's termination – falsification and dishonesty. Neither sought nor utilized FMLA prior to their termination." (Hosey Aff. ¶ 6, ECF No. 27-12).

[10] Although DaSilva, in her contradictory affidavit, changed her story as to why she was not on the trip, she still does not dispute the relevant facts, namely that she failed to inform her supervisors of her absence.